1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERICK CHARLES MENDIOLA,                  No.  2:24-cv-01911 AC P

12                    Plaintiff,

13        v.                                   ORDER

14   PATRICK COVELLO, et al.,

15                    Defendants.

16

17        Plaintiff is a former state inmate who filed this civil rights action pursuant to 42 U.S.C.

18   § 1983 without a lawyer.  He has requested leave to proceed without paying the full filing fee for

19   this action, under 28 U.S.C. § 1915.  Plaintiff has submitted a declaration showing that he cannot

20   afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to

21   proceed in forma pauperis is granted.

22        I.        Statutory Screening of Prisoner Complaints

23        The court is required to screen complaints brought by prisoners[1] seeking relief against "a

24   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).

25   The federal in forma pauperis statute also authorizes federal courts to dismiss a case if the action

26   "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

27

28   _____

[1]  Plaintiff was incarcerated at the time he filed his lawsuit but has since been released based upon his recent notice of change of address.  ECF No. 10.

1

1    seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.

2    § 1915(e)(2).  A claim "is [legally] frivolous where it lacks an arguable basis either in law or in

3    fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as

4    frivolous if it is based on an indisputably meritless legal theory or factual contentions that are

5    baseless.  Id. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

6    pleaded, has an arguable legal and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir.

7    1989), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130

8    (9th Cir. 2000).

9         To avoid dismissal for failure to state a claim a complaint must contain more than "naked

10   assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of

11   action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words,

12   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

13   statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

14   court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

15   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

16   inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation

17   omitted).  When considering whether a complaint states a claim, the court must accept the

18   allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the

19   complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421

20   (1969) (citations omitted).

21        II.    Factual Allegations of the Complaint

22        The complaint alleges defendants Covello, Fisk, Young, and Pendleton violated plaintiff's

23   rights under the First, Eighth, and Fourteenth Amendments.  ECF No. 1.

24        Plaintiff alleges both Young and Pendleton disregarded his safety in retaliation for filing a

25   lawsuit against the warden.  Id. at 8, 12.  Specifically, he alleges that on February 2, 2024, Young

26   placed another inmate in plaintiff's cell, stating, "I got you a new cellmate, have fun!"  Id. at 12.

27   After entering the cell, the inmate began striking plaintiff in the face and plaintiff called for help

28   from Young, who had a direct line of sight and was looking into the open cell while plaintiff was

physically assaulted.  Id. at 3, 12.  Despite plaintiff calling for help multiple times, Young failed to take any action for approximately three minutes.  Id.  Young eventually did respond, entering the cell to handcuff plaintiff and make various threats against him.  Id.  Plaintiff alleges the other inmate had a history of violence in cell environments, was homosexual and therefore had an incompatible sexual orientation, and later told him that Young "set you up with me." Id. at 13.  Following the incident, plaintiff was moved to a new cell without being allowed to collect his personal property and later discovered some of his belongings were missing, including religious items such as rosaries.  Id. at 12-13.

After the incident, plaintiff received a rules violation report (RVR) for mutual fighting.  Id.  Fisk was the hearing officer and denied plaintiff's requests for specific witnesses, to submit questions to Young, and to have the hearing recorded.  Id. at 12-13.  Despite noting that video evidence did not show plaintiff assaulting his cellmate, Fisk found plaintiff guilty of mutual fighting based on a statement by Young.  Id. at 13.

On March 5, 2024, Pendleton approached plaintiff and said, "I'm having a new inmate moved in your cell this morning, have fun!" Id. at 4, 8.  Approximately one month later, the new cellmate physically assaulted plaintiff and threatened to sexually assault him.  Id. at 4, 8-9.  Plaintiff saw Pendleton later that day, at which point she asked, "What happened to your eye?  Is your celly Feliscian fucking you up yet?" Id. at 9.  About a week later, plaintiff saw Pendleton making choking gestures to her co-workers while looking directly at him.  Id. at 4, 9.  Pendleton was allegedly aware of the inmate's violent history in cell environments and that his religious beliefs were incompatible with plaintiff's beliefs.[2]  Id. at 10.  Plaintiff also alleges ongoing, unspecified harassment from Pendleton since February 2024.  Id. at 9.

Finally, plaintiff alleges that Covello, as warden, should have known his officers were not fulfilling their duties and that he did not take proper steps to correct their actions.  Id. at 5.

////

////

---

[2]  Plaintiff states he is a Christian and refers to his cellmate's beliefs as "worshiping the devil." ECF No. 1 at 8.

1     III.    Claims for Which a Response Will Be Required

2         After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that

3     plaintiff has adequately stated a valid claim for relief pursuant to the Eighth Amendment against

4     both defendants Young and Pendleton for failure to protect.  Defendants' alleged comments both

5     before and after placing his new cellmates are enough to infer they either knew plaintiff was at

6     risk of serious harm or deliberately created such a risk.  The allegation that Young watched and

7     did not intervene while plaintiff was being assaulted also supports a claim for failure to protect.

8     IV.    Failure to State a Claim

9         However, the allegations in the complaint are not sufficient to state any claim for relief

10    against Fisk and Covello, and the remaining claims against Young and Pendleton are also

11    defective.

12        Plaintiff's allegations that actions taken against him by Young and Pendleton were in

13    retaliation for his lawsuit against the warden are not supported by facts suggesting they were

14    aware of the lawsuit or that their conduct was otherwise motivated by plaintiff's protected

15    conduct.  Plaintiff also fails to allege facts demonstrating that Fisk's conduct was retaliatory

16    because there are no facts showing that Fisk's actions were motivated by plaintiff's protected

17    conduct.  The complaint therefore fails to state a claim for retaliation.

18        The allegations against Fisk also do not state a claim for violation of due process rights.

19    While the denial of witnesses can under some circumstances support a due process claim, plaintiff

20    does not allege he lost good-time credits or show that the disciplinary imposed atypical and

21    significant hardship such that he was entitled to such process.  Plaintiff also fails to state a due

22    process violation on the basis of property loss because California has an adequate post-

23    deprivation remedy.

24        Plaintiff fails to state a claim against Covello because he makes only conclusory

25    statements that appear to be based solely on Covello's position as warden.  There are no

26    allegations of Covello's personal participation in or knowledge of violations.  Instead, plaintiff

27    asserts that Covello should have known his officers were not fulfilling their duties, which is

28    insufficient to state any claim against him.

4

Finally, to the extent plaintiff is attempting to allege a claim for violation of his right of freedom of religion, he has not alleged facts explaining how defendants' conduct infringed on the practice of his religion.

It appears to the court that plaintiff may be able to allege facts to fix these problems. Therefore, plaintiff has the option of filing an amended complaint.

V.    Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately against defendants Young and Pendleton on the Eighth Amendment claims. By choosing this option, plaintiff will be agreeing to voluntarily dismiss all other claims against Young and Pendleton and all claims against defendants Fisk and Covello. The court will proceed to immediately serve the complaint and order a response from defendants Young and Pendleton.**

**The second option available to plaintiff is to file an amended complaint to fix the problems described in Section IV. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.**

VI.    Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Some of the allegations in the complaint state claims against the defendants and some do not. The claims against Young and Pendleton for their failure to protect you from other inmates have been sufficiently alleged and can move forward in court. You have not alleged enough facts to state any other claims against Young and Pendleton or any claims against Fisk and Covello.

You have a choice to make. You may either (1) proceed immediately on your failure to protect claims against Young and Pendleton and voluntarily dismiss all other claims and defendants or (2) try to amend the complaint. To decide whether to amend your complaint, the court has attached the relevant legal standards that may govern your claims for relief. See Attachment A. Pay particular attention to these standards if you choose to file an amended complaint.

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2.  Plaintiff has stated cognizable claims against Young and Pendleton for failure to protect.  The complaint does not state any other claims for which relief can be granted.

3.  Plaintiff has the option to proceed immediately on his failure to protect claims against defendants Young and Pendleton as set forth in Section III above, or to file an amended complaint.

4.  Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

5.  If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of all claims except the failure to protect claims against Young and Pendleton.

DATED: July 1, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERICK CHARLES MENDIOLA,                    No.  2:24-cv-1911 AC P

12                Plaintiff,

13        v.                                     NOTICE OF ELECTION

14   PATRICK COVELLO, et al.,

15                Defendants.

16

17        Check one:

18   _____ Plaintiff wants to proceed immediately on his failure to protect claims against defendants

19        Young and Pendleton without amending the complaint.  Plaintiff understands that by

20        choosing this option, the all other claims against Young and Pendleton and all claims

21        against Fisk and Covello will be voluntarily dismissed without prejudice pursuant to

22        Federal Rule of Civil Procedure 41(a).

23

24   _____ Plaintiff wants time to file an amended complaint.

25

26   DATED:_____

27                                        _____
                                          Erick Charles Mendiola
28                                        Plaintiff pro se

                                          1

1

2
Attachment A

3
This Attachment provides, for informational purposes only, the legal standards that may

4
apply to your claims for relief.  Pay particular attention to these standards if you choose to file an

5
amended complaint.

6
I.        Legal Standards Governing Amended Complaints

7
If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

8
about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode,

9
423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named

10
defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

11
There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

12
connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy,

13
588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

14
participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266,

15
268 (9th Cir. 1982) (citations omitted).

16
Plaintiff is also informed that the court cannot refer to a prior pleading to make his

17
amended complaint complete.  See Local Rule 220.  This is because, as a general rule, an

18
amended complaint replaces the prior complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967)

19
(citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir.

20
2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

21
II.       Legal Standards Governing Substantive Claims for Relief

22
A.  Failure to Protect

23
"[A] prison official violates the Eighth Amendment only when two requirements are met.

24
First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or

25
omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer

26
v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).  Second,

27
the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate

28
indifference to inmate health or safety."  Id. (internal quotation marks and citations omitted).  The

1

1    official is not liable under the Eighth Amendment unless they "[know] of and [disregard] an

2    excessive risk to inmate health or safety." Id. at 837.  He must then fail to take reasonable

3    measures to lessen the substantial risk of serious harm.  Id. at 847.  Negligent failure to protect an

4    inmate from harm is not actionable under § 1983.  Id. at 835.

5                        B.  Retaliation

6         To state a claim for retaliation, a plaintiff must allege defendants (1) took adverse action

7    against plaintiff (2) because of (3) plaintiff's protected conduct, and that the action (4) would chill

8    an inmate of reasonable firmness from furture protected conduct and (5) lacked a legitimate

9    correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

10        An adverse action is an act (or failure to act) by prison officials which causes harm, and

11    "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out."

12    Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009) (emphasis in original).  To show

13    defendants retaliated "because of" the plaintiff's actions, the plaintiff must show the defendants

14    were motivated by his protected conduct.  See Crawford-El v. Britton, 523 U.S. 574, 592 (1998)

15    (proof of defendant's general animosity toward plaintiff would not necessarily show her conduct

16    was motivated by plaintiff's protected conduct).  Protected conduct refers to acts taken by the

17    plaintiff that are protected by the First Amendment and may include lawsuits and grievances, as

18    well as verbal complaints or threats to sue.  See Rhodes, 408 F.3d at 567 (prisoners have a First

19    Amendment right to file prison grievances and pursue civil litigation); Shepard v. Quillen, 840

20    F.3d 686, 688 (9th Cir. 2016) (prisoners have "First Amendment right to report staff

21    misconduct"); Jones v. Williams, 791 F.3d 1023, 1036 (9th Cir. 2015) (threats to sue constitute

22    protected conduct); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (form of complaint,

23    including verbal, "is of no constitutional significance").

24                        C.  Disciplinary Due Process

25        "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

26    panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418

27    U.S. 539, 556 (1974).  Rather, with respect to prison disciplinary proceedings that include the loss

28    of good-time credits, an inmate must receive (1) twenty-four-hour advanced written notice of the

                                        2

1  charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence

2  relied on and reasons for the disciplinary action," id. at 564 (internal quotation marks and citation

3  omitted); (3) an opportunity to call specific witnesses and present documentary evidence where

4  doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4)

5  assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a

6  sufficiently impartial fact finder, id. at 570-71.  A finding of guilt must also be "supported by

7  some evidence in the record."  Superintendent v. Hill, 472 U.S. 445, 454 (1985).  The Wolff court

8  noted that its decision was not meant to "suggest . . . that the procedures required . . . for the

9  deprivation of good time would also be required for the imposition of lesser penalties such as the

10  loss of privileges."  Wolff, 418 U.S. at 571 n.19.  If a prisoner has not lost good-time credits, he

11  may also demonstrate that he is entitled to the due process outlined in Wolff by alleging facts

12  showing the disciplinary "impose[d] atypical and significant hardship on [him] in relation to the

13  ordinary incidents of prison life."  Sandin v. O'Conner, 515 U.S. 472, 484 (1995).

14            D.  False Disciplinary

15       Prisoners do not have a liberty interest in being free from false accusations of misconduct.

16  See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) ("there are no procedural safeguards

17  protecting a prisoner from false retaliatory accusations"); accord, Sprouse v. Babcock, 870 F.2d

18  450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the

19  impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state

20  constitutional claims."); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison

21  inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of

22  conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v. Lane,

23  747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence

24  which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can

25  be granted where the procedural due process protections . . . are provided.").

26            E.  Property Deprivation

27       The unauthorized deprivation of property by a prison official, whether intentional or

28  negligent, does not state a claim under § 1983 if the state provides an adequate post-deprivation

1  remedy, Hudson v. Palmer, 468 U.S. 517, 533 (1984), and "California Law provides an adequate

2  post-deprivation remedy for any property deprivations," Barnett v. Centoni, 31 F.3d 813, 816-17

3  (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810-895). Therefore, only an intentional

4  and authorized deprivation of property may constitute an actionable § 1983 claim for violation of

5  the Due Process Clause. An authorized deprivation is one carried out pursuant to established

6  state procedures, regulations, or statutes. Piatt v. MacDougall, 773 F.2d 1032, 1036 (9th Cir.

7  1985).

8         F.  Free Exercise of Religion

9         The First Amendment protects the right to the free exercise of religion. A religious claim

10 must satisfy two criteria to merit protection under the free exercise clause of the First

11 Amendment: (1) the claimant's belief must be "sincerely held" and (2) "the claim must be rooted

12 in religious belief, not in purely secular philosophical concerns." Malik v. Brown, 16 F.3d 330,

13 333 (9th Cir. 1994) (citations and internal quotation marks omitted). To state a First Amendment,

14 free-exercise-of-religion claim, a prisoner must show that a defendant burdened the practice of his

15 religion by preventing him from engaging in a sincerely held religious belief and that the

16 defendant did so without any justification reasonably related to legitimate penological interests.

17 Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008). To substantially burden the practice of an

18 individual's religion, the interference "must be more than an inconvenience." Freeman v. Arpaio,

19 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85 (overruling

20 the objective centrality test).

21        G.  Personal Involvement and Supervisory Liability

22        "Liability under § 1983 must be based on the personal involvement of the defendant,"

23 Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d

24 164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil

25 rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)

26 (citations omitted). To state a claim for relief under section 1983, plaintiff must link each named

27 defendant with some affirmative act or omission that demonstrates a violation of plaintiff's

28 federal rights. Furthermore, "[t]here is no respondeat superior liability under section 1983,"

4

1  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted), which means that a

2  supervisor cannot be held responsible for the conduct of his subordinates just because he is their

3  supervisor.  A supervisor may be liable for the constitutional violations of his subordinates if he

4  "knew of the violations and failed to act to prevent them."  Taylor, 880 F.2d at 1045.  "A

5  supervisor is only liable for constitutional violations of his subordinates if the supervisor

6  participated in or directed the violations, or knew of the violations and failed to act to prevent

7  them."  Id.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28